# EXHIBIT A

### IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY MARYLAND

| | |
|---|---|
| ABASI OLIVER<br>1405 Elkwood Lane, Unit 303<br>Capitol Heights, MD 20743<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC<br>27585 Mathison Way<br>Baltimore, MD 21104<br><br>Defendant. | Case No.: C-02-CV-22-000430<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Abasi Oliver, Plaintiff, brings this action against Amazon.com Services LLC, Defendant, and says:

### INTRODUCTION

1. Mr. Oliver was an employee of and worked for Amazon.com Services LLC ("Amazon" or "Defendant") since approximately April 2020 through November 2020. During that time-period Amazon discriminated against Mr. Oliver based on his race, color, gender and religion and retaliated against him in violation of the Maryland Fair Employment Practices Act, Maryland State Government Article 20-606, et seq. (FEPA) and Title VII of the Civil Rights Act of 1964 (Title VII). Mr. Oliver is a black male, whose religion is Muslim. This discrimination and retaliation included not only relating to the terms and conditions of Mr. Oliver's employment with Amazon, but also relates to Amazon terminating his employment in November 2020 for alleged safety infractions relating to a piece of equipment used to move goods and load planes (a "K-Loader").

1

2. Mr. Oliver filed a charge of discrimination with the federal Equal Employment Opportunity Commission (EEOC) against Amazon in December 2020, within a month after his termination from Amazon, and that charge also was "dual filed" with a local human relations commission in Maryland.

3. After investigating Mr. Oliver's charge for more than 180 days, the EEOC issued a determination in October 2021 finding that "there is reasonable cause to believe [Mr. Oliver] was discharged based on his race, sex and religion." The EEOC did not make any finding with respect to whether Amazon discriminated against M. Oliver based on color or retaliated against Mr. Oliver. The EEOC based its discrimination findings on the fact that Amazon treated Mr. Oliver differently than a white, female, non-Muslim employee who was not terminated despite Amazon being aware that she had multiple infractions during her employment, including damaging equipment and injuring others at the worksite.

4. After conciliation efforts failed, the EEOC then issued a notice of right to sue to Mr. Oliver, and Mr. Oliver files this Complaint and Demand for Jury Trial within 90 days of receiving that right to sue notice.

5. This suit is brought within two years after the unlawful employment practices occurred.

**FACTS GIVING RISE TO RELIEF**

6. Prior to April 2020, Mr. Oliver worked for Pinnacle Logistics, a third-party logistics provider for Amazon at BWI airport. The job duties generally involved moving goods offered or sold by Amazon into and out of a warehouse onsite at BWI airport and loading and unloading planes transporting those goods.

7. In or around April 2020, Amazon took over the logistics functions from Pinnacle and hired Mr. Oliver and other Pinnacle workers who had been working at the BWI facility. Prior to Amazon taking over those functions from Pinnacle, nearly all the workers at the BWI facility performing services were black. After Amazon took over the logistics functions at BWI airport, the workforce became much "lighter-and-whiter." This was due not only to Amazon's hiring practices, but also due to the pattern of Amazon terminating black employees (and mostly males), while white or female employees who engaged in similar conduct or infractions were not terminated. For example, if white or women employees made mistakes or engaged in safety violations, Amazon generally would retrain them or categorize the white or women employee violations as less serious than the similar violations committed by black men. Upon information and belief, sometimes Amazon would not even document the white employees' infractions.

8. This pattern of treating white employees differently than black (and generally male) employees included, but was not limited to, the white, female, non-Muslim employee identified by the EEOC in their determination finding reasonable cause to believe that Amazon illegally discriminated against Mr. Oliver.

9. In addition, after the take-over by Amazon, it appeared that the former employees of Pinnacle (again, mostly black men) generally were assigned to less prestigious job duties, such as working only in the warehouse, rather than their prior positions of working "on the ramp" assisting in the loading and unloading of planes. This further shows the intent of Amazon to segregate and limit equal employment opportunities for black men at the facility.

10. Amazon also began to remove black male employees who worked on the ramp and would replace the ramp workers with women or non-black employees. This occurred through Amazon's pattern of disparate treatment of black (and mostly male) workers who would be

3

terminated for safety violations or work rule infractions, while comparable violations or infractions by whites and women did not lead to their termination. This pattern included the white, female employee referenced in the EEOC's determination letter.

11. For Mr. Oliver personally, whose religion is Muslim, the take-over by Amazon also changed his ability to practice his religion. Mr. Oliver requested an accommodation to practice his religion while on break, specifically performing his required prayers toward Mecca. Amazon would not always accommodate his ability to pray during breaks at limited times during his shift. This became an issue during his employment with Amazon and played a part in his termination as well.

12. For example, a manager would make derogatory comments about Mr. Oliver's religion, including teasing and laughing at Mr. Oliver during Ramadan. The manager also would make jokes or hassle Mr. Oliver when Mr. Oliver would attempt to go to pray. This occurred in front of other managers.

13. Mr. Oliver also was part of a group of black men who had complained to a site manager about their treatment since Amazon's take-over of the facility and the difference in treatment between them and their white and female co-workers. This discussion about the difference in treatment occurred not long before Mr. Oliver's termination and played a part in his termination as well.

14. Shortly before his termination, Mr. Oliver had alerted a manager at the facility that a K-Loader was not functioning properly. That K-Loader was supposed to be taken out of commission and tagged as not working and in need of repair.

15. Before that K-Loader was repaired, Mr. Oliver was asked to assist with goods on a plane. His manager instructed him to get on a K-Loader and assist immediately. The manager

pointed to the K-Loader that was malfunctioning and instructed Mr. Oliver to use it "ASAP." Mr. Oliver explained the K-Loader was not working properly, had been acting up by operating in a jerking fashion, was not safe. Mr. Oliver also stated he was not comfortable using that K-Loader. The manager implied Mr. Oliver would lose his job if Mr. Oliver did not do as the manager demanded and again said that Mr. Oliver needed to assist in servicing the plane immediately. Due to the threat to his job, Mr. Oliver followed orders and used the malfunctioning K-Loader as instructed by his manager, and, as predicted, the K-Loader malfunctioned when Mr. Oliver drove it. Due to the K-Loader malfunctioning, Mr. Oliver ran into part of the warehouse, damaging a support beam of the warehouse and injuring himself.

16. Mr. Oliver was required to take a drug screen and then report the incident during his shift. When he reported the incident, Mr. Oliver was not able to describe fully in writing what occurred due to his wrist being injured in the accident, among other reasons.

17. When Mr. Oliver reported the matter, Amazon did not advise him of his rights to file for workers' compensation related to his injury.

18. Mr. Oliver was suspended with pay and terminated soon thereafter, and his appeal pursuant to Amazon's appeal process was denied in November 2020.

19. Other white, female and non-Muslim workers who had not complained of disparate treatment in the workplace have engaged in similar or worse conduct; yet Amazon did not fire them. This includes, but is not limited to, the individual referenced in the EEOC's determination.

20. Other employees who had not requested religious accommodation in the workplace have engaged in similar or worse conduct; yet Amazon did not fire them. This includes, but is not limited to, the individual referenced in the EEOC's determination letter.

21. Other white, female and non-Muslim workers have had followed their leader's instructions and engaged in similar or worse conduct than Mr. Oliver; yet Amazon did not fire them. This includes, but is not limited to, the individual referenced in the EEOC's determination.

**COUNT ONE -- Race, Color, Gender and Religious Discrimination In Violation of FEPA,**

22. The foregoing paragraphs 1 through 21 are incorporated herein as if set forth herein in full.

23. Defendant took unlawful employment actions against Plaintiff because of his race, color, gender or religion.

24. Defendant's adverse actions against Plaintiff include, but is not limited to, denying him a religious accommodation to practice his religion; suspending him without pay; and terminating his employment.

25. Defendant discriminated against Plaintiff because of his race, color, gender or religion in violation of FEPA.

26. As a result of Defendant's unlawful actions, Plaintiff was damaged.

27. As a direct and proximate cause of the discrimination to which he was subjected, Plaintiff suffered and continues to suffer lost earnings and benefits, inconvenience, harm to his professional reputation, and emotional harm.

28. Defendant acted with actual malice such that punitive damages should be awarded.

29. Wherefore, Plaintiff requests judgment against the Defendant for economic and non-economic damages to be decided by a jury, reasonable attorney fees and expenses, court costs, and for such other and further relief as may be appropriate.

## COUNT TWO -- Race, Color, Sex and Religious Discrimination In Violation of Title VII

30. Plaintiff incorporates by reference each of the facts contained in paragraphs 1 through 21 of this Complaint as if each was set forth herein in full.

31. Defendant took unlawful employment actions against Plaintiff because of his race, color, sex or religion.

32. Defendant's adverse actions against Plaintiff include, but is not limited to, denying him a religious accommodation to practice his religion; suspending him without pay; and terminating his employment.

33. Defendant discriminated against Plaintiff because of his race, color, sex or religion in violation of Title VII.

34. As a result of Defendant's unlawful actions, Plaintiff was damaged.

35. As a direct and proximate cause of the discrimination to which he was subjected, Plaintiff suffered and continues to suffer lost earnings and benefits, inconvenience, harm to his professional reputation, and emotional harm.

36. Defendant acted with malice or reckless indifference such that punitive damages should be awarded.

37. Wherefore, Plaintiff requests judgment against the Defendant for economic and non-economic damages to be decided by a jury, reasonable attorney fees and expenses, court costs, and for such other and further relief as may be appropriate.

## COUNT THREE -- Retaliation in Violation of FEPA

38. The foregoing paragraphs 1 through 21 are incorporated herein as if set forth herein in full.

39. Defendant terminated Plaintiff's employment because he engaged in protected activity under FEPA.

40. Other employees who had not engaged in protected activity under FEPA and who engaged in similar conduct as Plaintiff were not terminated.

41. As a result of Defendant's unlawful actions, Plaintiff was damaged.

42. As a direct and proximate cause of the retaliation or reprisal to which he was subjected, Plaintiff suffered and continues to suffer lost earnings and benefits, inconvenience, harm to his professional reputation, and emotional harm.

43. Defendant acted with actual malice such that punitive damages should be awarded.

44. Wherefore, Plaintiff requests judgment against the Defendant for economic and non-economic damages to be decided by a jury, reasonable attorney fees and expenses, court costs, and for such other and further relief as may be appropriate.

### COUNT FOUR -- Retaliation in Violation of Title VII

45. The foregoing paragraphs 1 through 21 are incorporated herein as if set forth herein in full.

46. Defendant terminated Plaintiff's employment because he engaged in protected activity under Title VII.

47. Other employees who had not engaged in protected activity under Title VII and who engaged in similar conduct as Plaintiff were not terminated.

48. As a result of Defendant's unlawful actions, Plaintiff was damaged.

49. As a direct and proximate cause of the retaliation or reprisal to which he was subjected, Plaintiff suffered and continues to suffer lost earnings and benefits, inconvenience, harm to his professional reputation, and emotional harm.

50. Defendant acted with malice or reckless indifference such that punitive damages should be awarded.

51.     Wherefore, Plaintiff requests judgment against the Defendant for economic and non-economic damages to be decided by a jury, reasonable attorney fees and expenses, court costs, and for such other and further relief as may be appropriate

**PRAYER FOR RELIEF**

Plaintiff respectfully prays that this Honorable Court:

1. Enter judgment in favor of Plaintiff Abasi Oliver, against Defendant, on each of Plaintiff's claims for discrimination and retaliation under FEPA and Title VII;

2. Grant Plaintiff such equitable relief as is just and proper, including re-assignment to Amazon to a position commensurate with Plaintiff's knowledge, skills, and abilities and restoration of all associated benefits;

3. Award reinstatement, back pay, front pay, lost wages, and benefits;

4. Award compensatory damages in an amount to be determined by a jury;

5. Award reasonable attorneys' fees and costs, pre-judgment interest, and post-judgment interest; and

6. Grant such relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to jury trial.

Date: March 9, 2022              Respectfully submitted,

/s/ John R. Ates
John R. Ates (Attorney #1512100002)
Ates Law Firm. P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
703-647-7501
j.ates@ateslaw.com